**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
SUNIL WALIA,

                    Plaintiff,

           -against-

ERIC H. HOLDER, JR., as Attorney General of
the United States Department of Justice,
LORETTA E. LYNCH, as U.S. Attorney,
Eastern District of New York, and JEH
JOHNSON, as Secretary of the
United  States Department of Homeland
Security,

                    Defendants.
--------------------------------------------------------X
SUNIL WALIA,

                    Plaintiff,

           -against-

JEH JOHNSON, as Secretary of the United States
Department of Homeland Security,

                    Defendant.
--------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-cv-5944 (ADS)(SIL)

11-CV-2512 (ADS)(SIL)

<u>**APPEARANCES:**</u>

**Law Offices of Louis D. Stober, Jr., LLC**
*Attorneys for the Plaintiff*
350 Old Country Road, Suite 205
Garden City, NY 11530
       By: Louis D. Stober, Jr., Esq.
          Albina Kataeva, Esq., Of Counsel

**Paul Bartels, Esq**.
*Attorney for the Plaintiff*
350 Old Country Road, Suite 205
Garden City, NY 11530

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the Defendants*
610 Federal Plaza, 5th Floor
Central Islip, NY 11722-4454
      By: Vincent Lipari, Assistant United States Attorney

**SPATT, District Judge**.

On December 3, 2012, the Plaintiff Sunil Walia (the "Plaintiff"), who at all relevant times has been a Special Agent ("SA") employed by the Defendant United States Department of Homeland Security ("DHS"), commenced an action under docket no. 12-cv-5944 against the Defendants the United States Department of Justice ("DOJ"); DHS; and the United States Attorneys' Office, Eastern District of New York ("EDNY Attorneys' Office")(collectively the "Defendants") for injunctive, declaratory, and monetary relief pursuant to the federal Privacy Act of 1974, 5 U.S.C. § 552a *et seq.* (the "Privacy Act") and the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

On June 14, 2013, the Plaintiff filed an amended complaint. In the Plaintiff's first and second causes of action, he alleges that the Defendants violated his rights under the Privacy Act because, without his consent, various DHS agents disclosed to various Assistant U.S. Attorneys ("AUSAs") in the Eastern District of New York the substance of three incidents involving alleged deficiencies in his work performance. In the Plaintiff's third and fourth causes of action, he alleges violations of the Federal Tort Claims Act, 28 U.S.C. § 1346, *et seq.* (the "FTCA") for abuse of process and negligent infliction of emotional distress.

On October 7, 2014, this action was consolidated with a separate action brought by the Plaintiff, docket no. 11-cv-2512, against DHS. That case had proceeded to summary judgment, and the claims remaining in that action are (1) certain non-time-barred allegations under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and (2) the Privacy Act claim.

There was also another case brought by the Plaintiff against a prior Secretary of DHS, Michael Chertoff. Walia v. Chertoff, 06-CV-6587 (JBW), 2008 WL 5246014 (E.D.N.Y. Dec. 17, 2008), which was settled in December 2008.

In the lead case under docket no. 12-cv-5944, presently pending before the Court is a motion by the Defendants pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment dismissing the Privacy Act claims and, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the FTCA claims.

For the reasons set forth herein, the motion is granted.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the parties' Rule 56.1 statements and the attached exhibits, and construed in a light most favorable to the non-moving party, the Plaintiff. Triable issues of fact are noted.

In 2008-2009, the Plaintiff worked as a Special Agent in the General Smuggling and Trade Enforcement Group as a Deputy Special Agent in Charge in the office at the John F. Kennedy International Airport ("JFK Airport"). During that time, his direct supervisor was Joseph Lestrange, who became the Supervisory Special Agent/Group Supervisor ("GS") of that group on June 1, 2008, after previously serving as the Acting GS beginning in January 2008.

A. The February 2008 Search

On February 12, 2008, the Plaintiff and DHS SA Brian Ferrante reported to GS Lestrange regarding an encounter that had occurred the previous day at the Manhattan office of a business, Speedy Transit. The Plaintiff and Ferrante apparently conducted a search of certain boxes in

Speedy Transit's offices that resembled boxes which had been seized at JFK Airport, and which contained counterfeit items. While the Defendants assert that the Plaintiff and Ferrante lacked consent to conduct that search, the Plaintiff asserts that they had such consent.

B. The March-September 2008 Laptop Incident

On March 13, 2008, an individual suspected of downloading and/or distributing child pornography, Juan Bermudez ("Bermudez"), was returning on an inbound flight to JFK Airport when he was stopped by Customs and Border Patrol Officer ("CBPO") Wilson Olivencia. At that time, Bermudez was in possession of an Apple laptop computer and 21 CD/DVDs containing nude images. The Plaintiff, the JFK Airport Office duty agent that day, responded to CBPO Olivencia's request for assistance. Thereafter, the Plaintiff interviewed Bermudez and, with his written consent, retained the laptop computer and CD/DVDs for further inspection. With Bermudez's written consent, the Plaintiff then took the computer and CD/DVDs to his cubicle and locked them in his bottom desk drawer.

The Plaintiff did not tell anyone that he had custody of these items, including the case agent, Robert Raab, or GS Lestrange, because the Plaintiff forgot about the items. The Plaintiff maintains that CBPO Olivencia knew that the Plaintiff possessed these items and that he was not required to inform Raab or any other agent of this fact. SA Raab, through a review of the Treasury Enforcement Communication Systems ("TECS") records, an interview with Bermudez, and a discussion with CBPO Olivencia, eventually learned that the Plaintiff possessed the computer and CD/DVDs. Raab then informed Dennis J. McSweeney, the Group Supervisor ("GS") of the Child Exploitation Group in the NY Office. On September 30, 2008, GS McSweeney phoned Lestrange to complain that the Plaintiff had never notified Raab of the March 13, 2008 incident and of the seizure of the computer and CD/DVDs.

4

Lestrange then spoke in person to the Plaintiff, who initially claimed to have no recollection of the incident or the computer. However, ten minutes later, the Plaintiff returned with the computer and CD/DVDs in an unsealed plastic bag, claiming to have found them under his desk.

On October 1, 2008, SA Raab and SA Kristen Wilson-Rivera met the Plaintiff at the JFK Airport office and took custody of the computer and CD/DVDs. On October 2, 2008, SA Raab gave the computer and CD/DVDs to SA Christopher Doyle, a Certified Forensic Analyst ("CFA"). Doyle conducted a forensic analysis and found that there were 111 images of child pornography on the computer and that 3 of the CD/DVDS contained child pornography videos. The Plaintiff notes that the forensic analysis also revealed that the computer had not been accessed since February 2006, almost 2 years prior to Bermudez's encounter with CBPO Olivencia at the JFK Airport.

C. The August 2008 Interrogation Incident

The Defendants assert that, on August 26, 2008, Special Agent Herbert Kostron came to the office of GS Lestrange to report his concern over the Plaintiff's interrogation, then in progress, of a subject with the surname Field ("Field"), who had allegedly arrived at the JFK Airport to pick up counterfeit items. According to Lestrange, Kostron told him that the Plaintiff, the lead agent on the case, was questioning Field without advising him of his Miranda rights. The Plaintiff characterizes as hearsay Lestrange's recounting of Kostron's statements to him.

D. The October 2008 Performance Appraisal and its Disclosure

On October 21, 2008, Lestrange provided the Plaintiff with his 2008 annual Performance Appraisal. In that appraisal, Lestrange criticized the Plaintiff's performance with regard to the three above-mentioned incidents.

The Plaintiff notes that, in his mid-year performance appraisal dated June 4, 2008, Lestrange stated that there were no deficiencies noted with respect to the Plaintiff's work performance, even though the February 2008 incident occurred prior to the date of the appraisal.

E. The Chertoff Action

On November 6, 2008, the Plaintiff filed an application, by order to show cause, in the Chertoff action, to hold DHS in contempt, alleging that GS Lestrange issued the 2008 Performance Appraisal in retaliation against the Plaintiff for filing a discrimination complaint and an internal grievance. The internal grievance alleged that GS Lestrange had lied and falsified the Plaintiff's October 2008 Performance Appraisal.

In moving by order to show cause, the Plaintiff did not redact, seek to file under seal, or otherwise claim that the 2008 Performance Appraisal, or the discussion of the three incidents, was confidential. Instead, he submitted a declaration in which he disputed the illegality of the search and that he failed to give Miranda warnings to Field, but did not mention the March/September 2008 laptop incident.

According to the Plaintiff, "the parties [in the Chertoff action] were acting under a belief that the documents submitted would remain confidential, as the parties . . . entered into and work[ed] under a Confidentiality [A]greement." (Pl's Rule 56.1 Counter-Statement, ¶ 32.)

On November 13, 2008, the Plaintiff's application was denied.

F. The Field Criminal Action

At some point, Field was arrested and charged with federal crimes arising from a conspiracy to use and the use of counterfeit credit cards. In a complaint sworn to on March 24, 2008 by the Plaintiff, the lead agent on the case, Field had been arrested and read his Miranda rights, but had waived them and agreed to speak without an attorney.

By motion dated September 5, 2008, Field moved to suppress his post-arrest statements on the ground that he had not been read his <u>Miranda</u> rights until well after he was arrested and questioned. The motion did not implicate the Plaintiff personally. However, in connection with the Plaintiff's anticipated testimony in the suppression hearing scheduled for December 1, 2008, Lestrange advised AUSA Seth DuCharme of the three above-mentioned incidents.

Thereafter, Field entered into a plea agreement before the scheduled December 1, 2008 suppression hearing. On December 1, Field allocuted to the chargea. Field was sentenced in May 2009.

G. <u>The November 24, 2008 Memorandum</u>

On November 17, 2008, SA Raab and GS McSweeney presented the case for the prosecution of Bermudez for possession of child pornography to Eastern District of New York AUSA Judy Philips, Chief of Intake and Arraignments. However, AUSA Philips declined to accept the case for prosecution because she was told of the Plaintiff's alleged mishandling of the evidence. The Plaintiff notes that, at this time, certain information was withheld from AUSA Philips, including the fact that forensic evidence revealed that the computer had not been accessed since February 2006.

Subsequently, at the direction of ASUA Peter Fox, GS McSweeney authored a memorandum, dated November 24, 2008, informing the Special Agent In-Charge ("SAC") of the New York Office, Peter Smith, of the facts and circumstances leading to the investigation and declination of prosecution of Bermudez, including the Plaintiff's alleged mishandling of evidence. GS McSweeney obtained the information set forth in the November 24, 2008 memorandum from SA Raab. However, not only does the Plaintiff disputes the truth of the

contents of the November 24, 2008 memorandum, he alleges that GS McSweeney failed to independently verify the information contained in the memorandum.

H.  The Administrative Inquiry

Through a January 7, 2009 memorandum, SAC Smith referred the matter outlined in the November 24, 2008 memorandum to the Joint Intake Center, a DHS operations center which investigates allegations of misconduct.  The Plaintiff adds that, as of December 30, 2008, DHS agreed as part of the Chertoff action to "purge" the October 2008 Performance Appraisal from its system of records.

The matter was later referred to DHS's Discipline and Adverse Actions Panel ("DAAP"), which, by notice dated April 20, 2010, proposed that the Plaintiff be removed from federal service due to a failure to properly safeguard potential evidence and lack of candor.

By written decision dated November 4, 2010, the charge of mishandling potential evidence was sustained; the charge of lack of candor was not sustained; and a 14-day suspension was imposed on the Plaintiff.

I. The SF-95 Forms Filed Under the FTCA By the Plaintiff

On October 22, 2012, the Plaintiff filed SF-95 Forms with DOJ and DHS, alleging a claim for abuse of process under the FTCA.  In particular, the Plaintiff alleged that DHS unlawfully disclosed to AUSA Philips speculative information protected under the Privacy Act without following proper protocol.  The Plaintiff contends that, as a result of these illegal disclosures, his career has been damaged because he was permanently and involuntarily transferred to a different office.

J.  Docket No. 11-cv-2512 and the Instant Action

On May 25, 2011, the Plaintiff commenced an action under docket no. 11-cv-2512,

against Janet Napolitano as the former Secretary of DHS, asserting (1) violations of Title VII; (2)

intentional and negligent infliction of emotional distress; and (3) violations of the Privacy Act.

On December 3, 2012, the Plaintiff commenced this action under docket no. 12-cv-5944.

Pursuant to Local Rule 50.3.1(a), the two cases were deemed related to each other.

In docket no. 11-cv-2512, DHS moved for partial summary judgment dismissing the Title

VII claim and to dismiss the second and third causes of action sounding in intentional and

negligent infliction of emotional distress and the Privacy Act for failure to state a claim.

In that action, following two Memorandum of Decision and Orders dated December 2,

2013 and February 4, 2014, respectively, the claims remaining are (1) certain non-time-barred

allegations under Title VII and (2) the Privacy Act claim.

In docket no. 12-cv-5944, on August 25, 2014, the Defendants moved pursuant to Fed. R.

Civ. P. 56 for summary judgment dismissing the Privacy Act claims and, pursuant to Fed. R.

Civ. P. 12(b)(6), dismissing the FTCA claims.

On October 7, 2014, with the parties' consent, the Court consolidated the two actions "for

administrative purposes, and without prejudice to the rights of the respective parties." (Doc No.

59.).  The Court directed that the consolidated action proceed under the later filed docket no. 12-

cv-5944 and directed the Clerk of the Court to close docket no. 11-cv-2512.

The Court now considers the pending motion for summary judgment and the motion to

dismiss.

# II. **DISCUSSION**

A. The Legal Standard for a Rule 56 Motion

Summary judgment pursuant to Fed. R. Civ. P. 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. See Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuine triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996)(citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show a genuine issue of material fact to be tried. Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990)(quoting Anderson, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 — 87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the

motion are not credible." <u>Gottlieb v. Cnty. of Orange</u>, 84 F.3d 511, 518 (2d Cir. 1996)(internal citations omitted).

B.  <u>The Privacy Act Claims</u>

Under the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b).  A "'record' has a broad meaning encompassing, at the very least, any personal information about an individual that is linked to that individual through an identifying particular." <u>Rivera v. Potter</u>, 400 F. Supp. 2d 404, 409 (D.P.R. 2005).

At the outset, the Court notes that the DHS personnel records may qualify as a "system of records" within the meaning of the Privacy Act. <u>Parks v. United States Internal Revenue Service</u>, 618 F.2d 677, 682-83 (10th Cir. 1980)(fact that personnel files are systems of record" was uncontroverted); <u>Howard v. Marsh</u>, 596 F. Supp. 1107, 1110 (E.D. Mo. 1984)("Many of the documents incorporated in management's rebuttal memorandum were contained in plaintiff's personnel file and the EEO files maintained by defendant.  Clearly, these documents were name retrievable and thus were within a "system of records" maintained by defendant."), <u>rev'd on other grounds</u>, 785 F.2d 645 (8th Cir. 1986); <u>Jackson v. Veterans Admin.</u>, 503 F. Supp. 653, 655 (N.D. Ill. 1980)(the "defendant concedes that the plaintiff's personnel file ('OPF') is such a system of records within the meaning of the Privacy Act").

However, only "records" retrieved from "systems of records" are subject to the Privacy Act protections.  A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. §

552a(a)(5).  Thus, to be covered by the Privacy Act, a record must actually be retrieved from a system of records by using a personal identifier.  <u>Henke v. U.S. Dep't of Commerce</u>, 83 F.3d 1453, 1460–61 (D.C. Cir. 1996)(retrieval capability is not sufficient to create a system of records; to be in a system of records, a record must in practice be retrieved by an individual's name or other personal identifier).

The Defendants argue that the Privacy Act claims against DOJ must be dismissed because it did not maintain the system of records in which the 2008 Performance Appraisal was located.  The Court agrees.

Pursuant to the Privacy Act, 5 U.S.C. § 552a(e), each agency that maintains a system of records shall

> (5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

An individual may request the amendment of any record pertaining to him that the individual believes to be inaccurate, irrelevant, untimely, or incomplete. § 552a(d)(2).  If the agency has failed to maintain an individual's records in accordance with § 552a(a) or determines that an individual's record should not be amended, the individual may bring a civil action against the agency within the district court. § 552a(g)(1).  "By its terms, the only proper defendant in a claim brought pursuant to the Privacy Act is the agency which maintains the records in question."  <u>Hollins v. Cross</u>, No. CIVA1:09CV75 (JSK), 2010 WL 1439430, at *3 (N.D.W. Va. Mar. 17, 2010) <u>report and recommendation adopted</u>, No. CIVA1:09CV75, 2010 WL 1439988 (N.D.W. Va. Apr. 8, 2010).  For this reason, DOJ is not an appropriate defendant for the Plaintiff's Privacy Act claims and those claims are dismissed against DOJ.

Relatedly, the Court notes that the three incidents mentioned in the 2008 Performance Appraisal were not disclosed <u>by</u> DOJ, but rather <u>to</u> DOJ. Accordingly, for this reason as well, the Plaintiff's Privacy Act claims against DOJ must be dismissed. <u>Hernandez v. Alexander</u>, 671 F.2d 402, 410 (10th Cir. 1982)("[i]f the records were maintained by [another agency] . . . and disclosed by it, such actions could not be the basis for liability here since plaintiff did not bring his civil action against that agency"); <u>Drennon-Gala v. Holder</u>, No. 1:08-CV-3210 (JEC), 2011 WL 1225784, at *6 (N.D. Ga. Mar. 30, 2011)("If indeed it was the DOL that improperly disclosed plaintiffs OWC file, then plaintiff should have filed suit against the DOL, not the BOP and the DOJ.").

In addition, the Court notes that the EDNY Attorneys' Office falls under the umbrella of DOJ. Therefore, the Privacy Act claims against the EDNY Attorneys' Office fail on the same basis as they fail against DOJ.

With respect to DHS, the Plaintiff alleges that GS Lestrange made improper disclosures of information protected by the Privacy Act – namely, the three performance incidents – to AUSA DuCharme in November 2008; to AUSA Philips from 2009 onward; and to an AUSA with the surname Friedman at an unspecified time. According to the Defendants, all such disclosures were proper because (1) they were made on the basis of GS Lestrange's independent knowledge; (2) they fall within "routine use" exceptions to the Privacy Act; and (3) the Plaintiff waived the protections of the Privacy Act by his own prior and public disclosures of those events in the <u>Chertoff</u> action.

As to the Defendants' first argument, the Privacy Act "does not prohibit disclosure of information or knowledge obtained from sources other than 'records.'" <u>Pippinger v. Rubin</u>, 129 F.3d 519, 530–31 (10th Cir. 1997)(emphasis omitted). "In particular, it does not prevent federal

employees or officials from talking — even gossiping — about anything of which they have non-record-based knowledge." Id. at 531 (holding that where employees knew of the plaintiff's personal relationship with a co-worker based on personal observation, and where the plaintiff presented no evidence that the information was disclosed from records rather than personal knowledge, there was no Privacy Act violation).  "In other words, it is not a violation of the Privacy Act to disclose information simply because that information also happens to be contained in a Privacy Act-protected record." Minshew v. Donley, 911 F. Supp. 2d 1043, 1070 (D. Nev. 2012).  "Such a broad application of the Act would impose an 'intolerable burden,' and would expand the Privacy Act beyond the limits of its purpose, which is to preclude a system of records from serving as the source of personal information about a person that is then disclosed without the person's prior consent." Wilborn v. Dep't of Health & Human Servs., 49 F.3d 597, 600 (9th Cir. 1995), abrogated on other grounds by Doe v. Chao, 540 U.S. 614, 618, 124 S. Ct. 1204, 157 L. Ed. 2d 1122 (2004)(quoting Olberding v. United States Dep't of Defense, 709 F.2d 621, 622 (8th Cir. 1983).

Consequently, if an agency discloses information obtained independently of any such records, such as from personal knowledge or memory, the disclosure does not violate the Act, even if a record protected by the Privacy Act contains the same information. Wilborn, 49 F.3d at 600–02; Doe v. Dep't of Veterans Affairs of U.S., 519 F.3d 456, 463 (8th Cir. 2008).  To determine whether a disclosure derives from record-based knowledge versus non-record-based knowledge, generally the disclosure must be the result of someone actually having "retrieved" the record from the agency's system of records. Wilborn, 49 F.3d at 600–01.

Here, while the Plaintiff spends a great deal of time disputing whether or not his actions amounted to an improper search, or a failure to timely provide Miranda warnings, or a failure to

properly store and safeguard evidence, he cannot reasonably deny that GS Lestrange's knowledge of the above-mentioned incidents was acquired from his personal experience and contemporaneous conversations with the Plaintiff and other agents before the 2008 Performance Appraisal was written.

The fact that GS Lestrange acquired this information, as the Plaintiff describes, through the course of his duties does not, without more, render the "retrieval rule" inapplicable. In this regard, the Plaintiff's reliance on <u>Bartel v. FAA</u>, 725 F.2d 1403 (D.C. Cir. 1984) is misplaced.

There, the plaintiff improperly accessed agency records, which led another employee to investigate the plaintiff. <u>Id.</u> at 1405. The other employee conducted an investigation and generated an investigative report. <u>Id.</u> at 1405–06. The plaintiff then left the employment of the agency. <u>Id.</u> at 1406. Upon learning that the plaintiff was seeking re-employment with the agency, the other employee sent letters to the individuals whose files the plaintiff had accessed improperly, advising them of his investigation and findings. <u>Id.</u>

The United States Court of Appeals for the D.C. Circuit concluded that even if the employee disclosed the investigation and its results from memory, he still may have violated the Privacy Act because he had "ordered the investigation which resulted in the [report], made a putative determination of wrongdoing based on the investigation, and disclosed that putative determination in letters purporting to report an official agency determination." <u>Id.</u> at 1411. Under these narrow circumstances, the D.C. Circuit concluded, it was not "an intolerable burden to restrict an agency official's discretion to disclose information in a record that he may not have read but that he had a primary role in creating and using, where it was because of that record-related role that he acquired the information in the first place." <u>Id.</u>

However, the Court finds that <u>Bartel</u> is distinguishable from the facts of this case. There, the investigation referenced in <u>Bartel</u> concerned the plaintiff's own potentially unlawful disclosure of information. Here, by contrast, the Plaintiff does not even contend, let alone is there any evidence that, GS Lestrange ever initiated or ordered any investigation of the Plaintiff, or that he composed the 2008 Performance Appraisal as part of an investigation of the Plaintiff. <u>See</u> Pl's 56.1 Counterstatement, at 21 ¶ 10 ("Lestrange never requested an investigation to be conducted or advised management [of the improper search]. OPR did not investigate nor was a management inquiry into this incident conducted")(internal citation omitted); <u>id.</u> at 31, ¶ un-numbered ("Lestrange did not request an investigation [for the failure to give <u>Miranda</u> warnings], did not refer the matter to OPR for investigation, no management inquiry . . . was conducted…"); <u>id.</u> at 33, ¶ un-numbered ("As of November 17, 2008, when Lestrange disclosed the privacy act protected information, including the laptop incident, to AUSA DuCharme, there were no allegations of any wrongdoing related to the laptop incident at that time"); Opp Br., at 5 ("Lestrange testified at [his] deposition that he was not aware of any disciplinary action being taken against plaintiff in 2008 or 2009").

Rather, GS Lestrange merely noted the Plaintiff's alleged performance deficiencies in an annual performance review. <u>See</u> <u>Paige v. Drug Enforcement Admin.</u>, 665 F.3d 1355, 1361-1362 (D.C. Cir. 2012)("We made clear in <u>Bartel</u>, however, that the exception to the actual retrieval requirement was tied to "the factual context of th[at] case," <u>id.</u> at 1409, and we have subsequently declined to extend the exception beyond the <u>Bartel</u> facts")(citations omitted)); <u>York v. McHugh</u>, 850 F. Supp. 2d 305, 312 -313 (D.D.C. 2012)("<u>Bartel</u> is inapplicable [because u]nlike <u>Bartel</u>, there is no evidence that the Perkins Memo or other documents relating to the plaintiff were compiled as part of a formal 'investigation'"); <u>Armstrong v. Geithner</u>, 608 F.3d,

854, 859 (D.C. Cir. 2010)(stating that the court "narrowly tethered the exception [in Bartel], however, to the facts of that case"); Krieger v. U.S. Dept. of Justice, 529 F. Supp. 2d 29, 48-49 (D.D.C. 2008)("Krieger argues that Fadely disclosed information that was contained in his OPF and other records that are not subject to Privacy Act protection – not a record created during the course of an investigation. That distinction matters, as the D.C. Circuit [in Bartel] emphasized the unique set of facts created by having a supervisor disclosing the results of an investigation that he or she was responsible for implementing or overseeing — not simply an employee having knowledge of information that is coincidentally contained in a subordinates' personnel file or similar records").

Accordingly, GS Lestrange's disclosures were not based on information "retrieved" from a record in a system of records. Thus, the Court finds that the Plaintiff's Privacy Act claims against DHS fail as a matter of law under the Fed. R. Civ. 56 standards and dismisses those claims.

Furthermore, even if GS Lestrange's disclosures were based on information "retrieved" from a record in a system of records, the Court finds that such disclosures were made in connection with pending and potential criminal cases in which the Plaintiff was the lead agent and thus could be a witness or potential witness. In particular, the disclosures were made in connection with the Plaintiff's anticipated appearance as a witness in a suppression hearing scheduled for December 1, 2008 in the Field action. As such, these disclosures fall squarely within the "routine use" exemption under the Privacy Act. 5 U.S.C. § 552a(b)(3).

The Privacy Act defines "routine use" as "the use of [a] record for a purpose which is compatible with the purpose for which it was collected." Id. § 552a(a)(7). The Privacy Act also states that agencies must "publish in the Federal Register upon establishment or revision a notice

of the existence and character of the system of records, which notice shall include . . . each routine use of the records contained in the system, including the categories of users and the purpose of such use." Id. § 552a(e)(4)(D); see also Radack v. DOJ, 402 F. Supp. 2d 99, 105 (D.D.C. 2005)("In order to ensure that people are aware of the purposes for which their information might be disclosed, agencies are required to publish each routine use in the Federal Register.").  Thus, to successfully invoke the "routine use" exemption, a government agency must demonstrate both compatibility with the purpose for which the record was collected and publication in the Federal Register. See Dep't of the Air Force v. FLRA, 104 F.3d 1396, 1401– 02 (D.C. Cir. 1997); Radack, 402 F. Supp. 2d at 105 ("The government must . . . demonstrate both 'compatibility' and publication in the Federal Register in order to successfully invoke the routine use exception.").

In support of their motion for summary judgment, the Defendants argue that the publication and compatibility elements are satisfied by citing to guidelines in the Federal Register regarding the personnel records of federal employees held by the Office of Personnel Management, namely "Employee Performance File Systems Records." (Defs' Br., at 12.)  This system of records contains, among other things,

> a. Annual summary performance ratings of record issued under employee appraisal systems and any document that indicates that the rating is being challenged under administrative procedures (e.g., when the employee files a grievance on the rating received).

> b. A document (either the summary rating form itself or a form affixed to it) that identifies the job elements and the standards for those elements upon which the rating is based.

Privacy Act of 1974; Publication of Notice of Systems of Records, a Proposed New Routine Use, New Category of Records and an Amendment of a Current Category of Records, 71 FR 35342- 01, 2006 WL 1666088 (June 19, 2006).  The stated purpose for maintaining such records is to

"ensure that all appropriate records on an employee's performance are retained and are available (1) To agency officials having a need for the information; (2) to employees; (3) to support actions based on the records." OPM/Govt-2, 71 Federal Register at 355348.

The Court finds that GS Lestrange's disclosures were compatible with the following "routine uses" in OPM/Govt-2 (Routine Uses of Records Maintained in the System, Including Categories of Users and the Purposes of Such Uses), 71 Federal Register, 356348-49, 2006 WL 1666088 (June 19, 2006):

> g. To disclose, in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding.
>
> . . .
>
> i. To disclose information to another Federal agency, to a court, or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.
>
> j. To disclose information to the Department of Justice, or in a proceeding before a court, adjudicative body, or other administrative body before which the agency is authorized to appear, when:
>
> > 1. The agency, or any component thereof; or
> > 2. Any employee of the agency in his or her official capacity; or
> > 3. Any employee of the agency in his or her individual capacity where the Department of Justice or the agency has agreed to represent the employee; or
> > 4. The United States, when the agency determines that litigation is likely to affect the agency or any of its components, is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation, provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.
>
> . . .

m. To disclose pertinent information to the appropriate Federal, State, or local government agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, where the agency maintaining the record becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

The Plaintiff argues that the Defendants did not show the "need" for GS Lestrange to make the relevant disclosures because the incidents described in the 2008 Performance Appraisal did not constitute <u>Giglio</u> or impeachment material.

Under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), <u>Giglio v. United States</u>, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and their progeny, "the [g]overnment has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." <u>United States v. Certified Environmental Services, Inc.</u>, 753 F.3d 72, 91 (2d Cir. 2014)(quoting <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001)). "Favorable evidence" that must be disclosed for purposes of <u>Brady</u> "includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness," also known as "<u>Giglio</u> material." <u>Id.</u> "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." <u>Coppa</u>, 267 F.3d at 142.

However, the Court need not decide whether the underlying incidents referenced in the Plaintiff's 2008 Performance Appraisal constituted <u>Giglio</u> or impeachment material because the routine uses in OPM/Govt-2 subsections (g), (j.4), and (m) are not limited to disclosure of such information, but provide for disclosure of information that is, respectively, "relevant to the subject matter involved in a pending judicial or administrative proceeding"; or "relevant and necessary to the litigation"; or "pertinent." The information in the 2008 Performance Appraisal

was "relevant" and "pertinent" to enable AUSA DuCharme to assess the Plaintiff's viability as a witness at a suppression hearing, particularly given that (1) it involved a claim that the defendant had not received his <u>Miranda</u> rights and (2) apparently GS Lestrange had, a few months earlier, directed the Plaintiff to read a defendant his <u>Miranda</u> rights at the behest of a fellow agent, Herbert Kostron, who voiced concerns to GS Lestrange that the Plaintiff had failed to do so.  It is not relevant that the Plaintiff may not have been finalized as a witness for the suppression hearing and no demand for discovery had been made on him.  Inasmuch as AUSA DuCharme had to first assess the Plaintiff's viability as a witness – and ultimately concluded he was not viable – the information regarding the Plaintiff's deficiencies in performance was relevant and its disclosure fell within the above-cited permitted routine uses.

In addition, contrary to the Plaintiff's contention, information contained in a performance appraisal may be <u>Giglio</u> or impeachment material which must, in a criminal proceeding, be disclosed to defense counsel. <u>United States v. Smith</u>, No. 12CR39S, 2014 WL 3510118, at *4 (W.D.N.Y. July 14, 2014)("The defendant requests that the government search the personnel files and records of government agents to determine the existence of <u>Brady</u> or <u>Giglio</u> material. The government is directed to search for such material and to produce such material if any exists.")(internal citation omitted); <u>United States v. Whitely</u>, No. 11-CR-151A, 2014 WL 2765804, at *8 (W.D.N.Y. June 18, 2014)("The Court reminds counsel for the government that <u>Brady</u>, <u>Giglio</u> and their progeny dictate that the government's obligation to disclose material favorable to the accused extends to information that impeaches the credibility of the government's witnesses regardless of the witnesses' employer.  Accordingly, counsel for the government is hereby directed to ensure that a proper request and review of the personnel files of all law enforcement witnesses, regardless of their employer, is conducted and that all properly

discoverable information is disclosed to the defendant in a timely fashion as provided by <u>Brady</u>, <u>Giglio</u> and their progeny.").

United States v. Principato, No. 01 CR.588 (LMM), 2002 WL 31319931, at *3 (S.D.N.Y. Oct. 16, 2002) is distinguishable. There, the court did not hold that the prosecution was not required to examine and turn over personnel folders with impeachment folders; rather, it simply rejected the defendants' request for an order compelling "a personal review by the AUSA of the personnel files of all government-employed government witnesses." <u>Id.</u>

The Plaintiff also contends that <u>Giglio</u> information may not be disclosed through routine uses under the Privacy Act, but may only be disclosed to DOJ through a written request to the Office of Professional Responsibility ("OPR") pursuant to the procedures set forth in the U.S. Attorney's Manual ("USAM") 9-5.100. In other words, the Plaintiff argues that GS Lestrange's disclosures violated the Plaintiff's rights under the Privacy Act because he was not authorized to disclose <u>Giglio</u> information and that only OPR could disclose such information, upon a written request from the U.S Attorney's office. However, even assuming that the Plaintiff's interpretation of the USAM is correct, there are no authorities which condition disclosure of information under the Privacy Act's routine use exemption on compliance with the USAM. Accordingly, the Plaintiff's reliance on any purported violations of the USAM is unavailing. <u>See United States v. Valentine</u>, 820 F.2d 565, 572 (2d Cir. 1987)(finding that the defendant was not entitled to suppression of grand jury testimony pursuant to supervisory power for government's non-compliance with DOJ policy); <u>see also United States v. Goodwin</u>, 57 F.3d 815, 818 (9th Cir. 1995)("[T]he U.S. Attorney's Manual is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.")(internal quotations and citations omitted).

In sum, apart from the fact that the Court finds that GS Lestrange's disclosures were not violative of the Privacy Act because they were based on information independently acquired, and thus not "retrieved" from a record in a system of records, the disclosures were permissible under the routine use exception to the Privacy Act.

The Court declines to address the Defendants' final argument directed at the Plaintiff's Privacy Act claims based on GS Lestrange's disclosures, namely that, on November 6, 2008, the Plaintiff waived the protection of the Privacy Act by publicly filing – unredacted and without seal – the actual and entire 2008 Performances Appraisal in the Chertoff Action.

The Plaintiff also alleges impermissible disclosures by other DHS agents. In particular, the Plaintiff alleges that GS McSweeney and SA Raab violated the Privacy Act because, on November 17, 2008, they made false statements to AUSA Philips "while knowing that they would memorialize their statements in the [November 24, 2008] Memorandum." (Opp Br., at 25.) However, the Plaintiff cites no authority for the proposition that a Privacy Act violation can be supported by information disclosed from a record which did not exist at the time of the disclosure.

The Plaintiff separately contends that, in or about November or December of 2008, DHS SAC Peter Smith impermissibly disclosed the Plaintiff's protected information to AUSA Benton Campbell. However, a closer inspection of Smith's deposition testimony undercuts any such assertion. In actuality, Smith sent the November 24, 2008 Memorandum to DHS's Joint Intake Center, rather than to Campbell, and his conversation with Campbell concerned the status of the child pornography investigation in which the Plaintiff allegedly mishandled the laptop computer and whether that investigation would be pursued, rather than any disciplinary proceedings against the Plaintiff. (Smith Dep., at 20-23).

In addition, in opposition to the Defendants' motion for summary judgment and/or to dismiss the amended complaint, the Plaintiff, for the first time, asserts additional Privacy Act violations, none of which were mentioned in the complaint filed on December 3, 2012 nor the amended complaint filed on June 14, 2013. However, the Second Circuit has noted its refusal "to address the merits of claims raised for the first time at [the summary judgment stage] of the litigation." Rojo v. Deutsche Bank, 487 F. App'x 586, 588–89 (2d Cir. 2012); see also Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 F. App'x 57, 59 (2d Cir. 2011)(deeming unpreserved an unjust enrichment claim raised "for the first time in a summary judgment motion, not in the complaint"). "The Court therefore rejects [the] Plaintiff's belated attempt to add a claim without seeking leave, after the time to do so has expired, after discovery has closed and after [the] Defendant[s] ha[ve] moved for summary judgment." Jeffrey v. Montefiore Med. Ctr., No. 11 CIV. 6400 (RA), 2013 WL 5434635, at *18 n. 11 (S.D.N.Y. Sept. 27, 2013).

However, even were the Court to consider such claims, the Court would find that they would fail as a matter of law. First, the Plaintiff claims that DHS violated his rights under the Privacy Act because it agreed but failed, as part of the settlement of the Chertoff action, to expunge the Plaintiff's 2008 Performance Appraisal from his official personnel folder. However, as this claim is governed by the Civil Service Reform Act ("CSRA") rather than the Privacy Act, the Court is without subject matter jurisdiction to entertain it.

By way of background, the CSRA sets forth a "comprehensive system for reviewing personnel action taken against federal employees." United States v. Fausto, 484 U.S. 439, 455, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1988). It provides that any "employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . take . . . a personnel action with respect to any employee . . . because of . . .

any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences . . . any violation of any law, rule or regulation." 5 U.S.C. § 2302(b)(8).  If such a personnel action is taken, it is considered a "prohibited personnel practice." 5 U.S.C. § 2302(a).

Under 5 U.S.C. § 2302, "personnel action" is defined as including, among other things, "a performance evaluation," "a decision . . . concerning education or training if the education or training may reasonably be expected to lead to an appointment [or] promotion," reassignment, or "any . . . significant change in duties, responsibilities, or working conditions."  The CSRA further provides that "[a]n aggrieved employee affected by a prohibited personnel practice . . . may elect not more than one of the [following] remedies . . . (A) An appeal to the Merits Systems Protection Board. . . . (B) A negotiated grievance procedure under this section. . . . [or] (C) Procedures for seeking corrective action under" 5 U.S.C. §§ 1211 *et seq.*, which governs proceedings before the Office of Special Counsel. 5 U.S.C. § 7121(g).  The Second Circuit has held that "the [Civil Service] Reform Act . . . provides the exclusive remedy by which [federal] employees may challenge such actions and, unless the Reform Act either explicitly or by necessary implication sanctions judicial challenges to such actions, judicial challenge is foreclosed." Tiltti v. Weise, 155 F.3d 596, 600 (2d Cir. 1998).

In this case, with respect to the Plaintiff's claim that his rights under the Privacy Act were violated because he received negative performance evaluations with which he did not agree, these allegations plainly fall within the definition of "prohibited personnel actions." 5 U.S.C. §§ 2302(a)(2)(A), 2302(b)(8).  "When Privacy Act claims fall within the meaning of 'prohibited personnel practices' under the CSRA, the CSRA precludes federal courts from considering such claims." Doe v. F.D.I.C., 545 F. App'x 6, 8 (2d Cir. 2013); see also Orsay v. U.S. Dep't of Justice, 289 F.3d 1125, 1130 (9th Cir. 2002), abrogated on other grounds by Millbrook v. United

States, ⸺ U.S. ⸺⸺, 133 S. Ct. 1441, 185 L. Ed. 2d 531 (2013); Kleiman v. Dep't of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992); Henderson v. Soc. Sec. Admin., 908 F.2d 559, 560–61 (10th Cir. 1990).

The Plaintiff separately argues that "through discovery he learned that DHS and DOJ violated § 552(a)(d)(4) because they did not provide [the P]laintiff's grievance disputing the 2008 Performance Appraisal to anyone to whom disclosure was made." (Opp Br., at 25-26.) However, the Court finds that § 552a(d)(4) does not apply because the Plaintiff's grievance contesting his 2008 Performance Appraisal did not constitute a request for an amendment of records under § 552(a)(d)((2) as is necessary to trigger the requirement of providing a statement of disagreement under that statute.

Pursuant to the Privacy Act, agencies are generally required to grant individuals access to records pertaining to the individuals, and permit those individuals to request amendment of records pertaining to them. Id. § 552a(d)(1)-(2).  If a request for amendment is made, an agency must "promptly" either amend the record, or inform the individual of its refusal to amend the record. Id. § 552a(d)(2)(B).  If an agency refuses to amend the record, it must explain to the individual the reasons for its refusal. Id.  Upon refusal of an initial request to amend a record, the Privacy Act affords an individual the opportunity to appeal the initial decision. Id. § 552a(d)(3). If the appeal is denied, the agency must permit the individual to file a concise statement noting the individual's disagreement with the refusal to amend. Id.  This statement of disagreement then essentially becomes part of the record and must be disclosed by the agency whenever the record in question is itself disclosed. See id. § 552a(d)(4).

Here, the Plaintiff did not comply with any of these provisions.  Indeed, the Plaintiff did

not seek amendment of any records under the Privacy Act, nor was his grievance filed under the Privacy Act. Accordingly, any claim under § 552(a)(d)(4) of the Privacy Act fails as a matter of law.

Finally, the Plaintiff contends that the Defendants failed to keep an accounting of the disclosures made from the 2008 Performance Appraisal and, thus, violated § 552a(c) of the Privacy Act. Under that subsection, an agency is required to "keep an accurate accounting of . . . the date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) of this section [except for disclosures made under (b)(1) or (b)(2)]." Section (b) enumerates 12 exceptions pursuant to which disclosure may be made without written consent of the individual to whom the record pertains.

In this case, as previously noted, the Plaintiff has not alleged, let alone shown, that DOJ maintained the 2008 Performance Appraisal in its system of records. Thus, this claim must be dismissed as to DOJ.

To the extent asserted against DHS, the Plaintiff also fails to state a claim. As previously discussed, DHS's disclosures from the 2008 Performance Appraisal were made by GS Lestrange to DOJ based on his independent knowledge and not from "retrieval" from a protected record. Accordingly, his disclosures were not subject to § 552(b), and thus there was no duty to account under § 552a(c), which, as noted above, pertains only to disclosures made under § 552(b). Thus, any claim that the Defendants failed to keep an accurate accounting under § 552a(c) of the relevant disclosures is dismissed.

C.  The Rule 12(b)(6) Legal Standard

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences

in favor of the plaintiff. See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005); Rosen v. North Shore Towers Apts., Inc., No. 11–CV–00752 (RRM)(LB), 2011 WL 2550733, *2 (E.D.N.Y. June 27, 201 l). To survive a motion to dismiss pursuant to Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Therefore, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570. However, a pleading that offers only 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Thus, while detailed factual allegations are not required, the pleading rules do require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Twombly, 550 U.S. at 555 (internal citations omitted).

The Supreme Court clarified the appropriate pleading standard in Iqbal, setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting and citing Twombly, 550 U.S. at 556) (internal citations omitted).

D.  The FTCA Claims

As noted above, the Plaintiff asserts claims for abuse of process and negligent infliction of emotional distress under the FTCA.  However, "the United States is the only proper defendant in an action under the FTCA." Beburishvili v. United States, No. 12-CV-5985 (ERK)(SMG), 2014 WL 3896085, at *4 (E.D.N.Y. Aug. 8, 2014).  Further, even were the Plaintiff to seek leave to amend the complaint to substitute the United States as a defendant, leave to amend would be denied as futile.

In considering whether a proposed amendment would be futile, "the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional Fed. R. Civ. P. 12(b) standard." New Hampshire Ins. Co. v. Total Tool Supply, Inc., 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009).  The Court now turns to the proposed causes of action.

The FTCA waives the United States' sovereign immunity for claims against "[federal] investigative or law enforcement officers" for "assault, battery, false imprisonment, false arrest, malicious prosecution, [and] abuse of process." 28 U.S.C. § 2680(h).  This section defines "investigative or law enforcement officer' [as] any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Id.

It is well settled that the "FTCA does not authorize claims against federal prosecutors." Johnston v. Town of Greece, 983 F. Supp. 348, 359 (W.D.N.Y. 1997)(citing Bernard v. United States, 25 F.3d 98, 104-05 (2d Cir. 1994)(citing Dirienzo v. United States, 690 F. Supp. 1149, 1158, n. 8 (D. Conn. 1988)("The United States Attorney and his assistants are not 'law enforcement agents' for whose intentional torts the government is liable under [the FTCA].")). Accordingly, an abuse of process claim predicated on the actions of the AUSAs falls outside the FTCA's waiver of sovereign immunity; is barred by 28 U.S.C. § 2680(h); and would be futile.

With respect to any abuse of process claim based on the actions of DHS agents, the Court notes that the United States may be held liable in tort when employees acting within the scope of their employment are negligent in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

Under New York law, an abuse of process claim "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 69–70 (2d Cir. 2003)(internal quotation marks omitted); accord Hoffman v. Town of Southampton, 523 F. App'x 770, 771 (2d Cir. 2013). "Generally in the context of an abuse of process claim, "legal process means that a court issued the process, and the plaintiff will be penalized if he violates it." Scopo v. Laborers' Int'l Union of N. Am., No. 11-CV-3991 (CBA), 2013 WL 837293, at *5 (E.D.N.Y. Mar. 6, 2013)(emphasis added)(citing Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)(citation and quotation marks omitted).

Here, the Plaintiff does not allege that DHS or any of its employees, nor DOJ or any of its employees, obtained any <u>court</u> issued process. Instead, he alleges that, based on allegations of mishandling of the laptop computer, he was administratively referred to DAAP. Under these circumstances, the Plaintiff fails to advance a viable abuse of process claim. <u>Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC</u>, No. 11 CIV. 3327 (ER), 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013)("the [State Liquor Authority] proceeding does not fall within the definition of 'process' for the purpose of an abuse of process claim in New York because it is not a court proceeding."); <u>Nickerson v. Commc'n Workers of Am. Local 1171</u>, No. 504CV00875 (NPM), 2005 WL 1331122, at *8 (N.D.N.Y. May 31, 2005)("commencement of the union trial as well as the election process, the audit process, a DOL investigation, and the surety bond carrier claim, [do not] fall within the definition of 'process' for the purpose of an abuse of process claim in New York."). Accordingly, an abuse of process claim predicated on the actions of DHS agents fails to state a claim as a matter of law and a leave to amend to assert such a claim against the United States would be denied as futile.

Turning to the Plaintiff's claim under the FTCA for negligent infliction of emotional distress, under New York law, this claim has four elements: (1) breach of a duty owed to the plaintiff, which breach either unreasonably endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. <u>Shearon v. Comfort Tech Mechanical Co.</u>, 936 F. Supp. 2d 143, 156 (E.D.N.Y. 2013).

In the instant case, the Plaintiff's claim for negligent infliction of emotional distress essentially stems from the following allegations: (1) the alleged failure by the Defendants to comply with the USAM; (2) the alleged making of false statements in the 2008 Performance

Appraisal; (3) DOJ's failure to investigate those allegations and its refusal to accept cases in which the Plaintiff is involved because of DOJ's conclusion that the Plaintiff may be burdened with Giglio issues that made him unsuitable as a witness.

In the Court's view, none of these contentions, individually or collectively, states a claim for negligent infliction of emotional distress because the Plaintiff's physical safety was never endangered and because the conduct does not rise to the level of extreme and outrageous.

Further, as previously mentioned, the USAM does not afford the Plaintiff any substantive rights, and, thus, he cannot rest any claims thereupon. As to the alleged making of false statements in the 2008 Performance Appraisal, "Congress has expressly carved out such claims from the FTCA's coverage." Done v. Wells Fargo, N.A., No. 12-CV-04296 (JFB)(ETB), 2013 WL 3785627, at *5 (E.D.N.Y. July 18, 2013); Sanchez Tapia v. U.S., 338 F.2d 416 (2d Cir. 1964)(per curiam)("As to appellant's tort claim against the government, the district court properly held that it had no jurisdiction under 28 U.S.C. § 1346(b) et seq., for the Federal Tort Claims Act does not apply to 'any claim arising out of . . . misrepresentation, deceit.'")(quoting 28 U.S.C. § 2680(h)). Finally, prosecutorial decisions are vested exclusively in DOJ's discretion and, therefore, the Plaintiff has no right to compel it to prosecute cases he investigates or to use him as a witness.

Accordingly, the Court finds that the Plaintiff cannot plead a claim for negligent infliction of emotional distress.

### III. CONCLUSION

Based on the foregoing reasons, the Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 and/or pursuant to Fed. R. Civ. P. 12(b)(6) is granted and the amended complaint is dismissed in its entirety.

As a final note, again, the Court states that it expresses no opinion as the merits of the underlying allegations against the Plaintiff contained in the 2008 Performance Appraisal or whether such information, in fact, qualifies as <u>Giglio</u> or impeachment material.

The Clerk of the Court is respectfully directed to close the lead case docket no. 12-cv-5944; reopen docket no. 11-CV-2512; and to vacate the consolidation order dated October 7, 2014.

**SO ORDERED.**
Dated: Central Islip, New York
November 10, 2014

_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge